THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FREDERICK HEATHER and DAWN WASELL-HEATHER, a married couple,<br><br>            Plaintiffs,<br>      v.<br><br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>            Defendant. | CASE NO. C18-1179-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiffs' motion for partial summary judgment (Dkt. No. 39) and Defendant's motion for clarification (Dkt. No. 49). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Plaintiff's motion for partial summary judgment (Dkt. No. 39) and GRANTS Defendant's motion for clarification (Dkt. No. 49) for the reasons explained herein.

**I.    BACKGROUND**

Plaintiffs had a homeowner's insurance policy with Defendant, which was in effect during the events at issue. (Dkt. No. 40 at 9–13.) Under the policy, Defendant is required to "settle within 30 days after the amount of loss is finally determined," whether "by an agreement between [Defendant] and [Plaintiffs], an appraisal award or a court judgment." (*Id.* at 13.) On

August 23, 2016, Plaintiffs' home and belongings were destroyed in a fire. (Dkt. No. 1-1 at 2–3.) Plaintiffs retained a public adjuster to handle interactions with Defendant. (Dkt. No. 22 at 2.) On January 13, 2017, almost five months after the fire, Defendant issued a payment for damage to the structure. (Dkt. No. 40 at 98.)

The public adjuster submitted an inventory of Plaintiffs' lost belongings on March 15, 2017. (*Id.* at 37.) Plaintiffs submitted an executed proof of loss with the inventory. (Dkt. No. 25 at 11.) On May 16, 2017, Defendant provided Plaintiffs an actual cash value ("ACV") estimate of $151,998.90, approximately $60,000 less than Plaintiffs' proof of loss. (*See id.* at 11, 26–27; Dkt. No. 40 at 32.) In September 2017, Plaintiffs provided Defendant additional pricing information related to their inventory and proof of loss. (*See* Dkt. No. 40 at 45.)

Internally, Defendant's representatives noted that they must identify the items in Plaintiffs' inventory that Defendants did not adjust and inform Plaintiffs why those items were rejected. (*Id.* at 25.) On October 3, 2017, Plaintiffs' public adjuster requested Defendant provide an explanation for why its estimate was lower than Plaintiffs' inventory and proof of loss. (*See* Dkt. No. 40 at 35.) Defendant instead instructed Plaintiffs to review Defendant's inventory and identify any issues with the items or pricing. (*Id.* at 128.) Plaintiff's adjuster insisted that it was Defendant's obligation to provide a reasonable explanation, but Defendants responded that "[o]ur estimate is our explanation." (*Id.* at 40–42.) On November 9, 2017, and December 22, 2017, Plaintiffs' public adjustor repeated his request that Defendant provide an explanation of the estimate. (*Id.* at 36–38.) Again, Defendant stated that its estimate would serve as its explanation. (*Id.* at 130.)

On February 21, 2018, Plaintiffs' counsel requested that Defendant identify any items for which it had denied benefits or disputed the value submitted by Plaintiffs. (*Id.* at 44–45.) Defendant did not substantively respond. (*Id.* at 47.) On March 28, 2018, Plaintiffs' counsel reiterated the request for a detailed explanation. (*Id.* at 49.) Defendant again stated that its estimate would serve as its explanation. (*Id.* at 51.) Defendant once again suggested that if

Plaintiffs disagreed with the estimate, they should "indicate any items where [they] feel our valuation is incorrect" or where they "feel payment was denied." (*Id.*) On April 12, 2018, Plaintiffs' counsel made a final request for explanation, to which Defendant did not respond. (*Id.* at 53.) On June 4, 2018, Plaintiffs filed an Insurance Fair Conduct Act ("IFCA") notice. (Dkt. No. 25 at 52.)

Plaintiffs' insurance policy provides for an appraisal process to resolve disagreements as to the amount of a loss. (*See* Dkt. No. 23-1 at 1.) On June 6, 2018, Plaintiffs requested an appraisal of the contents of their home that were destroyed in the fire. (Dkt. No. 22 at 2.) In December 2018, the appraisal panel rendered a unanimous decision, finding that ACV for the contents of the home was $191,862.15. (Dkt. No. 23-2 at 1.) In January 2019, Defendant made a payment of $18,386.15, apparently deducting a prior payment from the amount due. (Dkt. No. 40 at 119.) This left a shortfall of $19,043.11. (*Id.* at 76.) On August 14, 2019, Plaintiffs deposed Alisha Jensen, Defendant's contents adjuster, and questioned her about Defendant's failure to pay the full amount of the contents appraisal award. (*Id.* at 21–22.) On August 20, 2019, Jensen sent a letter on behalf of Defendant apologizing for "an error in calculation" and enclosing an additional payment of $19,043.11. (*Id.* at 76.)

Plaintiffs move for summary judgment on Defendant's liability for three alleged instances of misconduct, reserving issues of causation and damages for trial. (Dkt. No. 39.) Defendant moves for clarification of the Court's order for production of a privilege log. (Dkt. No. 49.)

**II.    DISCUSSION**

    **A.    Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v.*

*Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

    **B.**    **Failure to Pay Appraisal Award**

        1.   <u>Breach of Contract</u>

Under Washington law, "[i]nsurance policies are to be construed as contracts, and interpretation is a matter of law." *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1141–42 (Wash. 1984). An insurance policy must be given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000) (quoting *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co.*, 951 P.2d 250 (Wash. 1998)).

The policy required Defendant to pay the appraisal award within 30 days of the appraisal decision. (*See* Dkt. No. 40 at 13.) It is undisputed that Defendant failed to issue the total payment until August 2019, eight months after the appraisal panel rendered its award. (*See* Dkt. Nos. 23-2 at 1, 40 at 76.) Defendant does not dispute that its failure to pay was a breach of the insurance policy. (*See generally* Dkt. No. 41.) Thus, the Court finds that Defendant breached its contractual obligation to timely issue payment of the appraisal award. Therefore, the Court GRANTS Plaintiffs' motion for summary judgment on this ground.

2. Bad Faith

An insurer owes to its policyholder a duty of good faith, the violation of which may give rise to an action in tort for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 284 (Wash. 2002). Insurer bad faith claims "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). To establish bad faith by an insurer, an insured must show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Id.* "Whether an insurer acted in bad faith is a question of fact," which can be decided on summary judgment only if reasonable minds could not differ in finding the insurer's conduct unreasonable. *Id.* Policyholders bear the burden of proving that an insurer acted in bad faith. *Id.* Bad faith does not require intentional misrepresentation or fraud. *Tyler v. Grange Ins. Ass'n*, 473 P.2d 193, 198 (Wash. Ct. App. 1970). A good faith mistake does not give rise to a bad faith claim if the insurer "acts honestly, bases its decision on adequate information, and does not overemphasize its own interest." *Werlinger v. Clarendon Nat. Ins. Co.*, 120 P.3d 593, 595 (Wash. Ct. App. 2005).

Defendant argues that its eight-month delay in paying the full appraisal award was not unreasonable, frivolous, or unfounded because the delay was due to a clerical error. (Dkt. No. 41 at 13–14.) Defendant states that it believed payment had been properly processed and that Plaintiffs only brought the error to Defendant's attention during Jensen's deposition in August 2019. (*Id.* at 6.) On August 20, 2019, Defendant paid the balance of the appraisal award, approximately one week after Plaintiffs questioned Jensen about the discrepancy. (Dkt. No. 40 at 76.) Defendant argues that its prompt cure following the deposition is evidence of its good faith. (Dkt. No. 41 at 14.) However, Defendant has not explained how the error or occurred or who is responsible for it. (*See generally id.*) Although Defendant now contends that Plaintiffs never attempted to make it aware of the error, (*see id.* at 6), its Rule 30(b)(6) deponent could not answer whether Defendant had been informed, stating that the information would be in the claim

1 file to which Plaintiffs did not have access, (Dkt. No. 40 at 63).

Plaintiffs' counsel declares that on March 7, 2019, he requested full payment of the appraisal award. (*See* Dkt. No. 25 at 3.) But Plaintiffs do not offer evidence documenting the request. Plaintiffs also point to Defendant's discovery responses. (Dkt. No. 39 at 5.) In its responses, Defendant stated that Plaintiffs had miscalculated the amount Defendant had paid, and Defendant denied that it had only paid $154,432.89 by June 4, 2018. (Dkt. No. 40 at 79–80, 85.) Additionally, Defendant admitted that the appraisal panel determined that the ACV was $191,862.15 and that Defendant had only paid an additional $18,386.15 after the appraisal. (*Id.* at 79–80.) According to Plaintiffs, this demonstrates that Defendant, or at least Defendant's counsel, knew that the parties disagreed as to whether the appraisal award had been timely paid. (*See* Dkt. No. 43 at 7.)

Material facts are in dispute as to whether Defendant's delay was caused by a clerical error and when Defendant knew about the underpayment. Thus, a genuine issue remains as to whether Defendant's delay in payment was unreasonable. *See Smith*, 78 P.3d at 1277. Therefore, Plaintiffs' motion is DENIED on this ground.

### 3. Consumer Protection Act

To prevail on their CPA claims, Plaintiffs must show: (1) an unfair or deceptive act or practice (2) in trade or commerce, (3) which affects the public interest and (4) injured the plaintiff's business or property, and (5) that the unfair or deceptive act complained of caused the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535–39 (Wash. 1986). A violation of any subsection of the Washington Administrative Code 284-30-330 is a *per se* unfair or deceptive act under the CPA. *James E. Torina Fine Homes, Inc. v. Mut. of Enumclaw Ins. Co.,* 74 P.3d 648, 653 (Wash. Ct. App. 2003). An insurer's breach of its duty of good faith constitutes a *per se* violation of the CPA. *See Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash.*, 254 P.3d 939, 947 (Wash. Ct. App. 2011).

Plaintiffs argue that Defendant's bad faith failure to promptly pay the appraisal award

constitutes a *per se* violation of the CPA. (*See* Dkt. No. 39 at 13.) But, as discussed above, material issues of fact remain as to whether Defendant acted in bad faith or in an unfair or deceptive manner when it delayed payment of the appraisal award. Therefore, Plaintiffs' motion for summary judgment is DENIED as to this ground.

### C. Refusal to Explain Denial of Contents Claim and Proof of Loss

Washington law requires insurers to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts." Wash. Admin. Code § 284-30-330(13); *see also* Wash. Admin Code § 284-30-330(3) (requiring insurer to "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies"); Wash. Admin Code § 284-30-380(1) ("Within fifteen working days after receipt by the insurer of fully completed and executed proofs of loss, the insurer must notify the first party claimant whether the claim has been accepted or denied."). A failure to promptly respond to a demand for coverage can constitute an unreasonable denial of benefits, even if the insurer eventually offers coverage. *Cedar Grove Composting, Inc. v. Ironshore Specialty Ins. Co.*, Case. No. C14-1443-RAJ, Dkt. No. 41 at 10 (W.D. Wash. 2015) ("[R]efusal to pay a demand for coverage reasonably promptly is [a] . . . denial of benefits."). A plaintiff can prove an insurer's bad faith by showing that an insurer breached the insurance contract in an unreasonable, frivolous, or unfounded manner. *See Smith*, 78 P.3d at 1277.

Plaintiffs argue that Defendant acted in bad faith by repeatedly refusing to explain its partial denial of Plaintiffs' contents claim. (Dkt. No. 39 at 14.) Plaintiffs submitted their inventory and proof of loss on March 15, 2017, over six months after the fire. (Dkt. No. 32 at 2–3.) Two months later, Defendant responded with an estimate that was approximately $60,000 lower than Plaintiffs' proof of loss. (*See* Dkt. No. 40 at 15, 32.) Despite Plaintiffs' repeated requests from October 2018 through April 2019, Defendant never provided a substantive explanation for the disparity. (*See id.* at 35–53, 130.) Instead, Defendant stated that "our inventory is our explanation" and asked Plaintiffs to provide itemized objections to its pricing

and inventory. (*Id.* at 40–42, 130.) In its Rule 30(b)(6) deposition, Defendant admitted that its response was inappropriate. (*See id.* at 65.)

Defendant offers two arguments why summary judgment on this claim should be denied. First, Defendant argues that Plaintiffs cannot demonstrate damages or proximate cause. (*Id.* at 9-10.) But Federal Rule of Civil Procedure 56(a) expressly permits a party to seek partial summary judgment by "identifying . . . the part of each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56; *see Barnes v. Cty. of Placer*, 654 F. Supp. 2d 1066, 1070 (E.D. Cal. 2009) ("A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment."). Thus, Plaintiffs may seek summary judgment on specific factual questions and reserve the issues of causation and damages for trial. Second, Defendant argues that its investigation was prompt and reasonable. (Dkt. No. 41 at 9-10.) In support of this argument, Defendant contends that Plaintiffs were slow to provide an inventory and that Plaintiff's inventory initially lacked certain sourcing or pricing information. (*Id.* at 10.) Defendant further contends that because it provided Plaintiffs examples of some duplicate items in Plaintiffs' inventory, "any itemization or further explanation would have been pointless." (*Id.* at 11.) This argument is unavailing. Errors in Plaintiff's inventory do not obviate Defendant's statutory obligation to provide a reasonable explanation to their insureds upon denial of a claim. *See* Wash. Admin. Code § 284-30-330(13). Defendant has not offered a reasonable basis for its failure to explain its estimate, and thus acted in bad faith. Therefore, the Court GRANTS Plaintiffs' motion for summary judgment on this ground, reserving the issues of proximate cause and damages for trial.

Plaintiffs also move for summary judgment on the issue of whether Defendant violated the CPA when it failed to provide a reasonable explanation for its estimate. (Dkt. No. 43 at 12.) As discussed above, to prevail on a CPA claim, a plaintiff must show: (1) an unfair or deceptive act or practice (2) in trade or commerce, (3) which affects the public interest and (4) injured the plaintiff's business or property, and (5) that the unfair or deceptive act complained of caused the

injury. *Hangman Ridge Training Stables*, 719 P.2d at 535–39. Washington courts have determined that an insurer's breach of its duty of good faith constitutes a *per se* violation of the CPA. *See Farmers Ins. Co. of Wash.*, 254 P.3d at 947. Thus, because Defendant acted in bad faith as discussed above when it failed to provide an explanation of its estimate, Plaintiffs have satisfied the first three elements of this CPA claim. Therefore, the Court GRANTS Plaintiffs' motion for summary judgment on this ground, reserving the issues of proximate cause and damages for trial.

### D. Delay in Payment of Dwelling Benefits

On January 13, 2017, Defendant issued a payment to cover the loss of Plaintiffs' home. (*See* Dkt. No. 40 at 98.) This was approximately 143 days after Plaintiffs' home was destroyed. (*See* Dkt. No. 1-1 at 2.) Under the policy, Defendant is required to "settle within 30 days after the amount of loss is finally determined." (Dkt. No. 40 at 13.) Failing to promptly investigate such a claim is a violation of Washington law. *See* Wash. Admin. Code § 284-30-370. ("Every insurer must complete its investigation of a claim within 30 days after notification of claim, unless the investigation cannot reasonably be completed within that time."). Plaintiffs move for a finding that Defendant acted in bad faith and violated the CPA when it delayed issue of the dwelling benefits payment. (Dkt. No. 39 at 16–17.) Plaintiffs argue that the time frame of almost five months between the notification of the claim and the payment of dwelling benefits was unreasonable, frivolous, and unfounded. (*Id.*)

Defendant does not specifically raise any arguments addressing this claim. (*See* Dkt. No 41 at 8–17.) Defendant generally contends that Plaintiffs cannot establish damages or proximate cause for their bad faith claims. (*Id.* at 8–10). But Plaintiffs are permitted to move for summary judgment on parts of their claims, reserving other issues for trial. *See* Fed. R. Civ. P 56(a). Defendant also states that its investigation of the contents loss was prompt and reasonable, but Defendant does not specifically argue that its *dwelling* loss investigation could not be reasonably

//

completed within 30 days after notification of the claim.[1] (Dkt. No. 40 at 10–15.) Finally, Defendant generally contends that Plaintiff's CPA claims should be denied because Plaintiffs have not proven damages and because Defendant's claims handling was reasonable. (*Id.* at 16–17.)[2] But, as discussed above, Plaintiff may reserve issues for trial, and Defendant has not argued that it was reasonable to take more than 30 days to complete the investigation of the dwelling claim. Thus, there is no genuine dispute that Defendant unreasonably delayed paying Plaintiffs' dwelling benefits in bad faith and in violation of the CPA. *See* Wash. Admin. Code § 284-30-370. Therefore, the Court GRANTS Plaintiffs' motion for summary judgment on this ground, reserving the issues of proximate cause and damages for trial.

### E. Motion for Clarification

On October 23, 2019, the Court granted Plaintiffs' motion for a privilege log of documents in the claim file related to Plaintiffs' insurance claims at issue in this lawsuit. (Dkt. No. 46 at 4.) The Court ordered Defendant to produce a privilege log of documents in the claim file created on or after June 11, 2018, the date Defendant received the IFCA notice, but did not provide an end date for the privilege log. (*Id.*) The Court found that Defendant's determinations of Plaintiffs' loss and Defendant's decision about how much to pay are likely to be relevant to the present litigation, and that Plaintiffs' substantial need for such documents would likely outweigh Defendant's assertion of work product doctrine immunity. (*See id.*); Fed. R. Civ. P. 26(b)(3)(A)(ii). Therefore, the Court GRANTS Defendant's motion for clarification. (Dkt. No.

---

[1] Defendant accuses Plaintiffs of causing a delay processing the dwelling claim, noting that Plaintiffs waited until Defendant provided an estimate to submit their own. (Dkt. No. 41 at 4-5.) Defendant also accuses Plaintiffs' public adjuster of delaying and inflating the structure claim to maximize his profit. (*Id.* at 4.) But there is no evidence that the timing of Plaintiffs' submission prevented Defendant from promptly preparing its estimate.

[2] Defendant's expert William Hight opines generally that Defendant's investigation was reasonable, but Hight only evaluated the contents claim. (Dkt. No. 42-1 at 55–61.) Defendant's 30(b)(6) deponent stated that the complexity of the loss caused the delay. (Dkt. No. 40 at 59.) Neither of these conclusory statements bear sufficient weight for consideration on summary judgment.

49.) The Court hereby ORDERS Defendant to produce a privilege log of Plaintiffs' claim file up to and including August 20, 2019, the date on which Defendant paid the balance of the appraisal award.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment (Dkt. No. 39) is GRANTED in part and DENIED in part as follows:

1. Plaintiffs' request for a determination that Defendant breached the insurance policy when it failed to pay the full appraisal award within 30 days as required under the policy is GRANTED;
2. Plaintiffs' request for a determination that Defendant acted in bad faith and violated the CPA by failing to explain its denial of Plaintiff's contents inventory, in violation of Wash. Admin. Code § 284-30-330(13), is GRANTED;
3. Plaintiffs' request for a determination that Defendant committed bad faith and violated the CPA when it failed to issue payment of any benefits for the damaged dwelling until January 2017, in violation of Wash. Admin. Code § 284-30-370, is GRANTED; and
4. Plaintiffs' request for a determination that Defendant acted in bad faith and violated the CPA when it failed to pay the full appraisal award within 30 days as required under the policy is DENIED;

Defendant's motion for clarification (Dkt. No. 49) is GRANTED. Defendants shall produce a privilege log of Plaintiffs' claim file up to and including August 20, 2019. The parties shall meet and confer to discuss any disputes over the revised privilege log no later than January 20, 2020.

//
//
//
//

1 DATED this 2nd day of January 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE